# PLAINTIFF'S MOTION TO REMAND AND MEMORANDUM OF LAW

## I. PRELIMINARY STATEMENT

Plaintiff Andrew Quijano ("Plaintiff") moves to remand this action to the Supreme Court of the State of New York, County of Queens. This case is a quintessential state matter involving New York common law defamation and the protection of New York state jurors under **Judiciary Law § 519** and **NYLL § 740**.

The detailed factual allegations supporting these claims, including the timeline of Plaintiff's jury service and the specific defamatory statements published by Defendant, are set forth in Plaintiff's **Verified Complaint**, which is included within the Defendant's Notice of Removal (attached hereto as **Exhibit A**). Because the Defendant's alleged defamatory conduct completely overlapped Plaintiff's jury service for the State of New York, and because a valid forum selection clause mandates a different venue, this Court should decline jurisdiction and return the matter to the State Court.

## II. STATEMENT OF JURISDICTION

### A. Plaintiff Venue Selection was informed by NY LL § 740

Plaintiff exercised his statutory right to file in Queens County Supreme Court. Under **NYLL § 740(4)(b)**:

> *"Any action authorized by this section may be brought in the county in which the alleged retaliatory action occurred, in the county in which the complainant resides, or in the county in which the employer has its principal place of business."*

The Plaintiff met two conditions: he resides in Queens, and **more importantly, the alleged violation of Judiciary Law § 519 occurred while he was serving in Queens County Criminal Court**. Furthermore, **NYLL § 740(7)** (Existing Rights) states:

> *"Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any other law or regulation or under any collective bargaining agreement or employment contract."*

Removal to Federal Court diminishes Plaintiff's right to a local jury of his peers in the county where he resides and served his civic duty.

### B. The New York Legislature Has a Paramount Sovereign Interest in Protecting Whistleblowers from Federal Interference

The unique nature of **NYLL § 740** confirms that this is a matter of paramount state concern. The New York Legislature recently expanded the definition of "Retaliatory Action" under **§ 740(1)(e)(iii)** to specifically include:

> "...threatening to contact or contacting United States immigration authorities or otherwise reporting or threatening to report an employee's suspected citizenship or immigration status... to a federal, state, or local agency."

It demonstrates that New York has a compelling interest in protecting the **integrity of its reporting environment** from federal administrative reach. By prohibiting employers from using federal agencies as tools of intimidation, New York State has signaled that whistleblower protection is a core function of state sovereignty.

Entrusting this case to a federal court would undermine the Legislature's intent to keep these disputes within the state's own protective sphere. If the New York Legislature intended to protect whistleblowers even from the reach of federal immigration authorities, **it surely intended for a New York State juror, harassed during his service to the Queens County Criminal Court, to have his day in a New York State court.**

### C. Administrative Guidance from New York State

On February 18, 2025, the **Queens County Clerk**, acting as an arm of the New York State Unified Court System, advised Plaintiff to seek relief through the **New York Attorney General's Labor Bureau** regarding these exact facts (see **Exhibit C, Queens County Court e-mail**). Plaintiff followed this state-mandated path and filed a complaint on February 20, 2025.

## III. FURTHER ARGUMENTS FOR REMAND

### A. The Contractual Forum Selection Clause Mandates Venue in New York County, Not EDNY

As shown in Exhibit B (General Release, Section: State Law), the parties agreed:

> *"Any disputes arising under this Agreement shall be brought in a court of competent jurisdiction within New York County, New York."*

In *Yakin v. Tyler Hill Corp.*, the Second Circuit remanded the case because the contracted venue (Nassau County) lacked a federal courthouse, rendering removal to a federal courthouse in an adjacent county improper. Here, the violation is even more egregious. Defendant's own contract mandates **New York County**, a venue located exclusively within the **Southern District of New York**. Yet, Defendant removed this action to the **Eastern District of New York**. Under the *Yakin* doctrine, specifying a mandatory venue (New York County) that excludes the current court's geographic reach (EDNY) constitutes a waiver of the right to remove to this District.

The language was chosen by the Defendant. If they wanted to allow for removal to any federal court in the City of New York, they could have written that. Instead, they specified a single county. Any ambiguity in that geographic limitation must be construed against the Defendant as the drafter of the release.

## B. Remand is Warranted Due to Defendant's Failure to Strictly Comply with Procedural Requirements

It is well-settled in the Second Circuit that 'federal courts construe the removal statute narrowly, resolving any doubts against removability.' *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 104, 105-06 (2d Cir. 1991); *see also Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 179 (S.D.N.Y. 2003). This 'presumption against removal' means that where a defendant fails to strictly comply with the procedural or substantive requirements of 28 U.S.C. § 1446, **remand is mandatory.**

In this case, Plaintiff alleges that Defendant failed to strictly comply with these statutory requirements. The Plaintiff grants that the Defendant completed the Notice of Removal was filed in this Court on the final day of the 30-day window. **However, the Defendant's counsel dated the Notice of Filing as 'February 5, 2026,' the official, system-generated timestamp from the Queens County Clerk (NYSCEF) confirms the document was not filed or received until February 6, 2026, at 1:00 AM**, **the 31st day. (See Exhibit A, Page 1)**. Because removal is a "statutory privilege" that requires meticulous adherence to deadlines, this one-hour delay into the next business day, **if strict compliance is applied, should constitute a procedural defect that should be resolved in favor of remand to the state court.**

## C. New York State's Paramount Interest in Protecting the Integrity of its Jurors

The core of this litigation is the protection of a New York State juror. The Plaintiff alleges that the Defendant published a defamatory "final written warning" on January 6, 2025. Crucially, this **defamatory warning remained in effect throughout the entire duration of Plaintiff's jury service in Queens County Criminal Court**.

New York State has a profound interest in ensuring that its citizens can perform their civic duty without facing professional character assassination. Under **NY Judiciary Law § 519** states the following:

> "Any person who is summoned to serve as a juror under the provisions of this article and who notifies their employer to that effect prior to the commencement of a term of service shall not, **on account of absence from employment by reason of such jury service, be subject to discharge or penalty**."

The state legislature has made it clear that no employer shall "penalize" an employee on absence of jury service. To allow a federal court to adjudicate whether an employer's conduct

**defamed a sitting state juror,** thereby potentially influencing or punishing that juror's service, **interferes with the state court's inherent power to protect its own judicial process.**

## D. The Defamation Claim is a Matter of State Law and Professional Reputation

Defamation is a creature of state law. In this case, Defendant accused Plaintiff of *"Unauthorized use, misuse, or abuse of equipment."* Under New York law, this constitutes **Defamation Per Se** because it directly attacks Plaintiff's professional integrity in the field of cybersecurity.

Whether these statements were made with "actual malice" or "reckless disregard of the truth" under New York's specific defamation standards is a question that the state courts are uniquely qualified to answer. Furthermore, because this defamation occurred in the context of a state-protected activity (jury service), the Supreme Court of Queens County has a superior interest in resolving the dispute.

## E. The Action Involves Significant Issues of New York Public Policy Regarding Non-Waivable Rights

New York state courts have a superior interest in interpreting their own jury protection and labor laws. Under **28 U.S.C. § 1367(c)**, federal courts may decline to exercise jurisdiction over claims that involve "novel or complex issue[s] of State law." The question of how NYLL § 740 interacts with a state court clerk's guidance regarding Judiciary Law § 519 is a matter of significant state public policy.

The Defendant's General Release (See Exhibit B: Section General Release) purports to waive Plaintiff's rights under the **New York Whistleblower Law** (NY LL § 740). However, **NYLL § 740(7)** explicitly provides that the rights and remedies therein **shall not** be diminished by any "employment contract."

The question of whether a corporation can enforce a contractual waiver of state-mandated whistleblower protections, protections specifically designed to safeguard the public health and safety of New Yorkers, is a matter of paramount state interest. By attempting to waive non-waivable rights under **NYLL § 740(7)** within its General Release (Exhibit B: Section General Release), Defendant has created a direct conflict between private contract law and New York state public policy.

Entrusting the interpretation of this non-waivable statutory right to a federal court would undermine the New York State Legislature's express intent to provide a specific, **non-diminishable remedy for retaliated employees**. If this Court retains jurisdiction, it will be forced to interpret a novel and complex application of New York's whistleblower protections regarding the validity of a waiver that purports to strip New York citizens of state-mandated protections. Such a determination is best suited for the **state's own judiciary, which is the natural guardian of the New York Labor Law.**

## F. The Doctrine of Comity and the Deference Owed to State Functions

In the context of the federal-state relationship, comity represents a "proper respect for state functions" and a recognition that "**the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.**" *Younger v. Harris*, 401 U.S. 37, 44 (1971).

In the present matter, the interests of comity weigh heavily in favor of remand. The State of New York has established a specific administrative and judicial pathway to protect its jurors. As evidenced in **Exhibit C (Queens County Court e-mail)**, the Queens County Clerk, acting as the administrative arm of the New York State Unified Court System, provided the Plaintiff with specific guidance to seek redress through the **Labor Bureau of the New York State Attorney General's Office**.

Plaintiff followed this state-directed protocol and initiated a complaint with the Attorney General on February 20, 2025 (**see Exhibit D: Complaint filed with the Labor Bureau**). For this Court to retain jurisdiction would effectively bypass and disregard the ongoing administrative interest of the New York Attorney General and the state's own judicial oversight. Where a state has already begun managing a matter of significant local concern, namely, the protection of its own jury pool and the enforcement of **Judiciary Law § 519**, federal courts should, in the interest of comity, decline to exercise jurisdiction. To do otherwise would create a risk of inconsistent rulings between federal litigation and state administrative findings, undermining the efficiency and sovereignty of New York's labor and judicial protections.

## G. Defendant Has Failed to Affirmatively Establish Diversity Jurisdiction

Where jurisdiction is premised on diversity under **28 U.S.C. § 1332**, the removing party bears the burden of affirmatively establishing the citizenship of each party at the time of removal.

Defendant's Notice of Removal is facially deficient because it alleges only that Plaintiff "resides" in Queens, New York (Exhibit A, Notice ¶ 9). It is a well-settled principle in the Second Circuit that "**It is also clear that a statement of the parties' residence is insufficient to establish their citizenship**" *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996).

As the Second Circuit held in *Palazzo ex rel. Delmage v. Corio*:

> "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile... [which] is 'the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" 232 F.3d 38, 42 (2d Cir. 2000).

The Defendant has offered no facts, affidavits, or evidence regarding Plaintiff's *intent* to remain in New York indefinitely. By relying solely on an assumption of residence drawn from the Complaint, Defendant has failed to meet its heavy burden of proving diversity. Because "federal

courts must resolve any doubts in favor of remand," *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013), this jurisdictional uncertainty requires that the case be returned to state court.

## H. Defendant's Mischaracterization of the Action and Temporal Overlap with State Jury Service

The Court should further note that Defendant's **JS 44 Civil Cover Sheet (See Exhibit A)** significantly mischaracterizes the nature of this dispute. The Defendant selected **only Code 320 (Assault, Libel & Slander)**, **entirely omitting the employment and labor law components** of the action, such as **Code 442 (Employment)**.

This omission is not merely administrative; it obscures the critical fact that the alleged defamation, a wrongful final written warning, occurred in **perfect temporal overlap** with the Plaintiff's mandatory service as a juror for the **Queens County Criminal Court**.

While the Plaintiff's defamation claim is a distinct cause of action requiring proof of **reckless disregard for the truth**, the fact remains that this conduct **targeted a sitting state juror**. A federal court's retention of this case would necessitate litigating the validity of a corporate warning issued to a person while they were performing a sovereign duty for the State of New York. **Because this alleged defamation is inextricably linked to the Plaintiff's status as an officer of the state court at the time of the occurrence, the State of New York has a paramount interest in adjudicating this matter**. Defendant's failure to accurately code this action as an employment and labor dispute further suggests that removal was **an objectively unreasonable attempt to bypass the state court's oversight of its own jurors**.

# III. CONCLUSION

**WHEREFORE**, for the reasons set forth above, Plaintiff Andrew Quijano respectfully requests that this Court:

1. **REMAND** this action to the Supreme Court of the State of New York, County of Queens, pursuant to 28 U.S.C. § 1447(c).
2. **GRANT** such other and further relief as the Court deems just and proper.

Dated: February 11, 2026

Respectfully submitted,

*Andrew Quijano*

Andrew Quijano, Plaintiff Pro Se

54-29 69th Lane Maspeth, NY 11378

+1 (917) 224-2122