# EXHIBIT B

**CONFIDENTIAL SEVERANCE AGREEMENT AND GENERAL RELEASE**

THIS CONFIDENTIAL SEVERANCE AGREEMENT AND GENERAL RELEASE (Agreement) is entered into by Amazon.com Services LLC (Employer) and Andrew Quijano (Employee).

**RECITALS**

1. Employee enters into this Agreement in connection with the termination of Employee's employment with Amazon.com Services LLC (depending on the circumstances, each an "Employer").

2. Employer and Employee wish to enter into an agreement to resolve any disputes that may exist between them arising out of or concerning their employment relationship and its termination, and they enter into this Agreement for that purpose.

3. Additionally, Employer and Employee previously entered into a Confidentiality, Noncompetition and Invention Assignment Agreement, dated 07/11/2022 (Confidentiality Agreement). Employee may obtain a copy of the Confidentiality Agreement in the Employment Documents Portal (MyDocs) tool or by contacting the Amazon My HR Live Support at 1-888-892-7180. The parties also enter into this Agreement to reaffirm their existing rights and responsibilities under the Confidentiality Agreement.

4. In exchange for consideration provided for in this agreement, including continued employment and the attendant salary and benefits, Employee executes this complete release of all claims and on 05/28/2025 will execute a Reaffirmation of Agreement and Supplemental Release of Claims, attached hereto, a reaffirmation of this release. Employee executes these documents with the intent that as of the Termination Date Employee will have waived and released any and all possible claims against Employer arising in any way out of Employee's employment and the termination of that employment.

**AGREEMENTS**

The parties agree as follows:

1. Employee understands and agrees that Employee's employment with Employer will terminate effective 05/28/2025 ("Termination Date").

2. **CONSIDERATION**

Employer agrees as follows:

2.1. **Lump Sum Payment**
Within 20 business days of the Effective Date, as defined in the Section of this Agreement titled EFFECTIVE DATE, Employee will receive a lump sum payment of $38,612.18, less legally

# Severance Agreement

required payroll deductions.

### 3. VALID CONSIDERATION
Employer and Employee agree that the consideration described in the Section of this Agreement titled CONSIDERATION is not required by Employer's policies or procedures or by any contractual obligation and is offered solely as consideration for this Agreement.

### 4. PRIOR AGREEMENT
Employee understands and agrees that Employee has continuing obligations under the Confidentiality Agreement, incorporated by reference, reaffirms those commitments in this Agreement, and agrees that, as part of this Agreement, Employee will comply fully with the terms of the Confidentiality Agreement. Employee also confirms that Employee has not violated the Confidentiality Agreement.

### 5. RETURN OF PROPERTY
Employee confirms and agrees that Employee has an obligation to return and has returned, or will return as required by company policy, all of the following: files, memoranda, records, credit cards, computers, computer files, devices, hardware, passwords, and passkeys or related physical or electronic access devices, data, or information, and any and all other property received from Employer or any of its current or former employees or generated by Employee in the course of employment.

### 6. GENERAL RELEASE
In consideration of the severance payments and other promises contained herein, Employee expressly waives any and all claims against Employer and, to the maximum extent permitted by law, releases Employer (including its parent corporation and any affiliated corporations, its owners, officers, directors, stockholders, managers, agents, employees, and representatives) ("Releasees") from any and all actual or potential actions, claims, causes of action, and damages, known or unknown, on account of or arising out of the Employee's employment relationship with Employer or the termination thereof. It is understood that this release includes, but is not limited to, any claims for wages, bonuses, employment benefits (including claims under continuing employee benefit plans or claims under ERISA), stock options, restricted stock units, or any other stock purchase plans of Employer's subsidiaries or affiliates, or damages of any kind whatsoever, arising out of any common law torts, any contracts, express or implied, any covenant of good faith and fair dealing, express or implied, any theory of wrongful discharge, any theory of negligence, any theory of retaliation, any theory of discrimination or harassment in any form, any legal restriction on Employer's right to terminate employees, or any federal, state, or other governmental statute or ordinance, including, without limitation, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Equal Pay Act, the Fair Credit Reporting Act, the Employee Retirement Income Security Act of 1974, the Genetic Information Non-Discrimination Act, the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), the National Labor Relations Act (NLRA), New York State Human Rights Law, New York Executive Law, New York Equal Rights Law, Equal Pay Law for New York, New York State Labor Relations Act, New York Whistleblower Law, New York Off-duty Conduct Lawful Activities Discrimination Law, New York Family Leave Law, New York Wage-Hour and Wage Payment Laws and Regulations, New York Minimum Wage Law, New York Wage Hour and Wage

# Severance Agreement

Payment Law, New York State Worker Adjustment and Retraining Notification Act, or any other statutory or common law limitation or regulation of the employment relationship of state, federal, State, or other government law, and any claim for attorneys' fees and costs.

7. **NO ADMISSION OF WRONGDOING**

This Agreement shall not be construed as an admission by Employer of any wrongful act, unlawful discrimination, or breach of contract, and Employer specifically disclaims any liability to or unlawful discrimination against Employee or any other person.

8. **ACKNOWLEDGEMENTS AND PROMISE NOT TO SUE**

Employee acknowledges (i) that with the exception of any final paycheck for amounts already earned and accrued that may be issued to Employee, in accordance with Employer's regular payroll procedures, after Employee's execution of this Agreement, Employee has received from Employer all wages, salaries, bonuses, benefits, and other amounts earned and accrued, less applicable deductions, and Employer has no obligation to make any payments to Employee other than the consideration described in the Section of this Agreement titled CONSIDERATION (ii) Employee has reported to Employer any and all work- related injuries incurred during employment; (iii) Employer properly provided any leave of absence because of Employee's or a family member's health condition and Employee has not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave; (iv) Employee has provided Employer with written notice of any and all concerns regarding suspected ethical and compliance issues or violations on the part of Employer or any released person or entity; (v) Employee has accurately reported all work activities, including those outside of Employee's scheduled hours, on breaks, or after shifts; (vi) Employee has not incurred any job- related expenses for which Employer has not reimbursed Employee; and (vii) Employee has not filed any complaints, claims, or actions against Employer or any released person or entity. Employee promises not to pursue any claim settled by this Agreement. If Employee breaks this promise, Employee agrees to pay Employer's costs and expenses (including reasonable attorney's fees) related to the defense of any such claims.

9. **SEVERABILITY**

The provisions of this Agreement are severable, and, if any part of it, other than the general release clause set forth in the section of this Agreement titled GENERAL RELEASE, is found to be unlawful or unenforceable, the unlawful or unenforceable provision(s) shall be narrowly construed, and the other provisions of this Agreement shall remain fully valid and enforceable to the maximum extent consistent with applicable law.

10. **STATE LAW**

This Agreement is entered into in New York County, New York and shall be interpreted under the laws of the State of New York without regard to New York's conflicts of laws principles. Any disputes arising under this Agreement shall be brought in a court of competent jurisdiction within New York County, New York. Employee acknowledges that Employee will be subject to a permanent injunction and/or temporary restraining order for any violations of this Agreement, including any violations of the Confidentiality Agreement. In the event that Employer prevails in any action brought by Employer to enforce any provision of this Agreement or the Confidentiality Agreement (including but not limited to an action for a permanent injunction or a temporary restraining order), Employee agrees that Employee will pay Employer's costs, including attorneys' fees, in addition to any other damages or amounts that may be awarded.

# Severance Agreement

11. **KNOWING AND VOLUNTARY AGREEMENT**

Employee represents and agrees that Employee has read this Agreement, understand its terms and the fact that they release any and all claims Employee may have against Employer, understands that Employee has the right to consult counsel of choice and has either done so or has voluntarily waived the right to do so, and enters into this Agreement knowingly and voluntarily and without duress or coercion from any source.

Employee further acknowledges that in executing this Agreement, Employee does not rely on any representation or statement by any representative of Employer concerning the subject matter of this Agreement, except as expressly set forth in the text of this Agreement.

12. **ENTIRE AGREEMENT**

This Agreement, with the Confidentiality Agreement(s) and (if the applicable) the Secondary Release, all incorporated by reference, sets forth the entire understanding between Employer and Employee and supersedes any prior agreements or understandings, express or implied, pertaining to the terms of Employee's employment with Employer and the termination of the employment relationship, except the Agreement shall not in any way affect, modify, or nullify any prior agreement Employee entered into with Employer regarding confidentiality, trade secrets, inventions, or unfair competition.

13. **EFFECTIVE DATE**

This Agreement shall become effective on the latest of: the date of Employee's termination of employment or the date of execution of this Agreement by all parties, including execution by Employee of all releases referenced in the Agreement, or the next calendar day following expiration of any revocation period provided for in this Agreement, if Employee does not revoke (the "Effective Date").

14. **OPPORTUNITY TO CONSIDER AGREEMENT**

Employee has ten (10) calendar days to consider this Agreement (Consideration Period). If Employee signs this Agreement before the Consideration Period ends, Employee agrees, represents, and warrants that the decision to sign is knowing, voluntary, and not induced by Employer through fraud, misrepresentation or threat to withdraw or alter the offer. Employee and Employer agree that changes to the Employer's offer contained in this Agreement, whether material or immaterial, will not restart the Consideration Period. Employee acknowledges that Employee has a right to consult with an attorney of Employee's choice as to the subject matter and effect of this Agreement, has had an opportunity to do so, and enters into this Agreement freely and without duress of any kind.

15. **EXCEPTIONS AND NO INTERFERENCE WITH RIGHTS**

Nothing in this Agreement is intended to waive Employee's claims (i) for unemployment or workers' compensation benefits, (ii) for any medical benefits or any judgment or monetary awards or settlements that may arise related to medical benefits under any group health plan sponsored by Employer or any Releasee, (iii) for vested rights under ERISA-covered employee benefit plans as applicable on the date Employee signs this Agreement, (iv) that may arise after Employee signs this Agreement, or (v) which cannot be released by private agreement. In addition, nothing in this Agreement or any exhibits thereto, including but not limited to the return of property, confidentiality, and notice provision[s], nondisparagement, general release, acknowledgements provisions, or promise not to sue, prevents Employee from filing a charge or complaint with, participating in an investigation or proceeding conducted by, or providing

testimony before or confidential information to a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission ("EEOC"), National Labor Relations Board, the Department of Justice, the Securities and Exchange Commission, or any other any federal, state or local agency charged with the enforcement of any laws, or from exercising rights under Section 7 of the NLRA to engage in joint activity with other employees. However, by signing this release Employee is waiving rights to individual relief based on claims asserted in such a charge or complaint, or asserted by any third-party on Employee's behalf, except where such a waiver of individual relief is prohibited. This Agreement does not limit your right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law. Please take notice that federal law provides criminal and civil immunity to federal and state claims for trade secret misappropriation to individuals who disclose a trade secret to their attorney, a court, or a government official in certain, confidential circumstances that are set forth at 18 U.S.C. §§ 1833(b)(1) and 1833(b)(2), related to the reporting or investigation of a suspected violation of the law, or in connection with a lawsuit for retaliation for reporting a suspected violation of the law.

16. **MEDICARE DISCLAIMER**

Employee represents that either (i) Employee is not a Medicare Beneficiary as of the time Employee is entering into this Agreement; or (ii) if Employee is a Medicare Beneficiary as of the time Employee is entering into this Agreement, that Employee has no claims for any medical benefits or any judgment or monetary awards or settlements that may arise related to medical benefits under any group health plan sponsored by Employer or any Releasee (collectively, "Medical Claims"); or (iii) if Employee has any Medical Claims, that such claims are not waived by this Agreement (consistent with the Section of this Agreement titled EXCEPTIONS AND NO INTERFERENCE WITH RIGHTS). Accordingly, Employee further represents that the Centers for Medicare and Medicaid Services ("CMS") has not made any payments to a healthcare provider for which it could assert that Employer or any Releasee should have been the primary payer. Employee specifically agrees to reimburse the Employer and/or any Releasee, as appropriate, for the amount of any payment or benefit that CMS may determine should have been paid to CMS, not Employee.

**EMPLOYER**

Amazon.com Services LLC

By:



Dated: 05/14/2025

**EMPLOYEE**

Andrew Quijano
Andrew Quijano (May 28, 2025 10:35 EDT)

Dated:

May 28, 2025

# EXHIBIT C

 **NYU**                                                                                  **Andrew Quijano <afq2003@nyu.edu>**

---

# Question about Jury Retaliation over promotion

2 messages

---

**Andrew Quijano** <afq2003@nyu.edu>                                           Tue, Feb 18, 2025 at 3:46 PM
To: queensjuryinfo@nycourts.gov

Hello,
I spoke to both Keisha Blaire and Raymond Weaver earlier today, but this e-mail is to request on a potential case of retaliation for jury duty time. The retaliation is a promotion that would be denied.

Background:
My manager specifically created a document stating Q1 2025 promotion, the plan was to submit my artifacts for promotion on January 22, 2025. A part of the promotion process was to get 8 referrals of people at the rank I want to be promoted to (I can get something in writing if needed), this step was already completed. As shown in the Slack screenshot, the promotion would have been effective April 1. See both screenshots attached.

However, I received a warning on January 6th, See Warning_and_Survival.pdf. I wanted to contest this, even though my manager has attempted to intimidate me to signing the warning. Furthermore, **I was told this warning would make it impossible for me to get promoted for the 90-day warning period, and I'd need to wait another 6 months to be working at "the next level" to be eligible for promotion again.** I let my manager know, I started Jury Duty on January 9th and January 10th, and I was selected to be an alternate juror on the 10th.

From January 13 - 16th, I in Jury Duty, and the judge didn't require us to be present on Friday, January 17th, so I signed in to work and see Jury_Duty_Delay.pdf. Since the judge said to expect to take all of next week off, and HR wanted to meet on January 24th, I replied that it would have to be next week. I eventually met with HR on January 31st and was exonerated on February 3rd, see exonerated.pdf. Also, the warning e-mail specifically has it in writing that the warning was removed. Unfortunately, this meant, the deadline to submit everything has passed.

Currently, my manager last I spoke mentioned he would speak up his chain of command that since the warning is removed, it should be possible to go for promotion. However, he does have an interesting habit to get sick at unusually convenient times, that my other teammates noticed. Given this, I highly suspect my promotion will be delayed until likely August instead of April at this rate. But either way, the screenshot of the documentation creation should show it was pretty clear the intent was to go for submitting the documentation for promotion on Q1, and I can ask that the step of getting referrals has been completed in October/November 2024 for promotion documentation to be sent January 22.

Request:
Given this scenario, I think this falls under the "shall not, on account of absence from employment by reason of jury duty service, be subject to discharge or penalty", where the penalty would be a promotion being denied, since there were delays to getting the warning removed due to Jury Duty. I haven't met with my manager yet, as I don't want to press anything legal until I am very sure I would win/not face retaliation from Amazon that I can't defend myself against. I would request a letter that states the following:

1. Cites the specific law and what specific penalties would occur to Amazon
2. Clearly state, given the evidence I provided, denial of promotion would fit as breaking this jury duty protection law, and that the promotion should proceed to be effective April 2025, as if the warning never occurred.
3. It would be nice to know who this letter should go to, my manager or manager's manager, or maybe HR too (since I figure their job is to avoid Amazon getting sued)?

I should note, I already uploaded proof of jury duty being complete to Amazon. Although, I don't think my manager (or HR for that matter) is aware of that clause of jury duty protection for employees from being punished or fired due to Jury Duty.

Thank you for your help! If you need more documentation, I can definitely provide some! Please respond as soon as possible, I do hope to clear this mess sooner than later.

--

Sincerely,

Andrew Quijano
NYU Tandon School of Engineering | PhD '28
NYU Email Address
917-224-2122

---

**7 attachments**



**April_1_Effective.png**
216K

**promote_document_Jan_22.png**
161K

**Jury_Duty.pdf**
500K

**Jury_Duty_Delay.pdf**
715K

**Exoneration.pdf**
258K

**Warning_and_Survival.pdf**
775K

**Glen_Sick_More_Delays.pdf**
259K

---

**QueensJuryInfo** <QueensJuryInfo@nycourts.gov>                    Thu, Feb 20, 2025 at 9:33 AM
To: "afq2003@nyu.edu" <afq2003@nyu.edu>
Cc: "Raymond M. Weaver" <RMWEAVER@nycourts.gov>

Good Morning,

Thank you for reaching out to the Jury Division.  As promised, we sought a course of action for you to have your concerns addressed.

Please utilize the following link in reporting the incident you described below which is usually handled by the Labor Unit at the Attorney General's Office:

https://ag.ny.gov/labor/jury-duty-faqs

File a complaint/ New Your State Attorney General


Thank you,

Jury Operations

---

[Quoted text hidden]

[Quoted text hidden]

Please be CAREFUL when clicking links or opening attachments from external senders.

8/9/2025, 2:49 PM

# EXHIBIT D

# OFFICE OF THE ATTORNEY GENERAL LETITIA JAMES

## STATE OF NEW YORK DEPARTMENT OF LAW



**LABOR BUREAU**
28 Liberty Street, 15th Floor
New York, NY 10005
Tel: (212) 416-8700 | Fax (212) 416-8694

---

| | |
|---|---|
| Intake Id | 1-1029143492 |

**Your Information**

| | |
|---|---|
| First Name | Andrew |
| Last Name | Quijano |
| Street Address | 54-29 69th Lane |
| Address Line 2 | |
| City/Town | Maspeth |
| State | NY |
| County | QUEE |
| Zip/Postal Code | 11378 |
| Phone Number | 917-224-2122 |
| What is the best time to reach you by phone? | during work hours |
| Email Address | afq2003@nyu.edu |

**Subject of Your Complaint**

| | |
|---|---|
| Employer Name | Amazon |
| Supervisor Name | Glen Stevenson |
| Supervisor Email Address | |
| Supervisor Phone Number | |
| Street Address | |
| Address Line 2 | |
| City/Town | |
| State | |
| Zip/Postal Code | |
| Website | |
| How many people work for this employer at all locations? | 50+ |

**Additional Complaint Information**

| | |
|---|---|
| Are you still working? | Y |
| Job Title/Function | Security Engineer |
| Job Duties | |
| What hours do you work?(Start Time) | 9 AM |
| What hours do you work?(End Time) | 5 PM |

| | |
|---|---|
| Do you get a meal break? | Y |
| What days do you work? (Check those that apply) | MON/TUE/WED/THU/FRI |
| What is you rate of pay? | 175000/Year |
| Are you paid a higher rate for work-hours over 40 in a week? | N |
| How often are you paid? | Bi-Weekly |
| Do you receive tips? | N |
| How are you paid? | Check |
| Do you receive health or other benefits? | Y |
| Description of Benefits | 401K, health insurance |
| Do you receive a W-2? | Y |
| Does it list all your wages? | N |
| Have you already complained to your employer? | N |
| Has matter been submitted to another agency or attorney? | N |
| Is court action pending? | N |

Complaint Description

My manager specifically created a document stating Q1 2025 promotion, the plan was to submit my artifacts for promotion on January 22, 2025. A part of the promotion process was to get 8 referrals of people at the rank I want to be promoted to (I can get something in writing if needed), this step was already completed. I have it in writing that the promotion would have been effective April 1.

However, I received a warning on January 6th. I wanted to contest this, even though my manager has attempted to intimidate me to signing the warning. Furthermore, I was told this warning would make it impossible for me to get promoted for the 90-day warning period, and I'd need to wait another 6 months to be working at "the next level" to be eligible for promotion again. I let my manager know that I was in Jury Duty selection on January 9th and January 10th, and I was selected to be an alternate juror on the 10th.

From January 13 - 16th, I was in Jury Duty, and the judge didn't require us to be present on Friday, January 17th, so I signed in to work remotely. Since the judge said to expect to take all of next week off, and HR wanted to meet on January 24th, I replied that it would have to be next week. I eventually met with HR on January 31st and was exonerated on February 3rd from the warning. I was able to get this in writing, the warning is removed. However, the deadline to submit promotion documents has already passed.

The issue is, the Jury Duty note states I can't be punished for time off, and it seems like the delay in the warning appeal process that denied my promotion will be held against me. This fits under the punishment definition, as I'd be denied quite a bit of salary and equity due to being in Jury Duty.

## Uploaded Documents

| | |
|---|---|
| User Uploaded Document Names | April_1_Effective.png |
| | promote_document_Jan_22.png |

Jury_Duty.pdf

Jury_Duty_Delay.pdf

Warning_and_Survival.pdf

Exoneration.pdf

Glen_Sick_More_Delays.pdf

**In filing this complaint, I understand that:**

• The Attorney General is not the complainant's private lawyer. The Attorney General is a public servant who protects the public from illegal or misleading practices. This complaint does not mean that the Attorney General will start a lawsuit for the complainant.

• The Attorney General cannot give me legal advice or represent me in court. If I have any questions about my legal rights or responsibilities, I should contact a private lawyer.

• The Attorney General may send a copy of my complaint, and any documents I provide, to the person or organization I mention in my complaint. I give that person or organization permission to provide information about my complaint to the Attorney General.

• The Attorney General may use information from my complaint to show that the law has been broken.

• The Attorney General works with other government agencies at the state, local, and federal levels to investigate complaints and with the police. The Attorney General may share my complaint with these agencies.

**I affirm this 20th day of February, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment that:**

• my complaint is true;

• any documents attached are true and accurate copies of the original; and

• I understand that this document may be filed in an action or proceeding in a court of law.

**Signature**                              Andrew Quijano