# EXHIBIT A

**CONFIDENTIAL SEVERANCE AGREEMENT AND GENERAL RELEASE**

THIS CONFIDENTIAL SEVERANCE AGREEMENT AND GENERAL RELEASE (Agreement) is entered into by Amazon.com Services LLC (Employer) and Andrew Quijano (Employee).

**RECITALS**

1. Employee enters into this Agreement in connection with the termination of Employee's employment with Amazon.com Services LLC  (depending on the circumstances, each an "Employer").

2. Employer and Employee wish to enter into an agreement to resolve any disputes that may exist between them arising out of or concerning their employment relationship and its termination, and they enter into this Agreement for that purpose.

3. Additionally, Employer and Employee previously entered into a Confidentiality, Noncompetition and Invention Assignment Agreement, dated 07/11/2022   (Confidentiality Agreement).  Employee may obtain a copy of the Confidentiality Agreement in the Employment Documents Portal (MyDocs) tool or by contacting the Amazon My HR Live Support at 1-888-892-7180. The parties also enter into this Agreement to reaffirm their existing rights and responsibilities under the Confidentiality Agreement.

4. In exchange for consideration provided for in this agreement, including continued employment and the attendant salary and benefits, Employee executes this complete release of all claims and on 05/28/2025 will execute a Reaffirmation of Agreement and Supplemental Release of Claims, attached hereto, a reaffirmation of this release.  Employee executes these documents with the intent that as of the Termination Date Employee will have waived and released any and all possible claims against Employer arising in any way out of Employee's employment and the termination of that employment.

**AGREEMENTS**

The parties agree as follows:

1. Employee understands and agrees that Employee's employment with Employer will terminate effective 05/28/2025 ("Termination Date").

2. **CONSIDERATION**

Employer agrees as follows:

2.1. **Lump Sum Payment**
Within 20 business days of the Effective Date, as defined in the Section of this Agreement titled EFFECTIVE DATE, Employee will receive a lump sum payment of ██████████ less legally

required payroll deductions.

### 3. VALID CONSIDERATION

Employer and Employee agree that the consideration described in the Section of this Agreement titled CONSIDERATION is not required by Employer's policies or procedures or by any contractual obligation and is offered solely as consideration for this Agreement.

### 4. PRIOR AGREEMENT

Employee understands and agrees that Employee has continuing obligations under the Confidentiality Agreement, incorporated by reference, reaffirms those commitments in this Agreement, and agrees that, as part of this Agreement, Employee will comply fully with the terms of the Confidentiality Agreement. Employee also confirms that Employee has not violated the Confidentiality Agreement.

### 5. RETURN OF PROPERTY

Employee confirms and agrees that Employee has an obligation to return and has returned, or will return as required by company policy, all of the following: files, memoranda, records, credit cards, computers, computer files, devices, hardware, passwords, and passkeys or related physical or electronic access devices, data, or information, and any and all other property received from Employer or any of its current or former employees or generated by Employee in the course of employment.

### 6. GENERAL RELEASE

In consideration of the severance payments and other promises contained herein, Employee expressly waives any and all claims against Employer and, to the maximum extent permitted by law, releases Employer (including its parent corporation and any affiliated corporations, its owners, officers, directors, stockholders, managers, agents, employees, and representatives) ("Releasees") from any and all actual or potential actions, claims, causes of action, and damages, known or unknown, on account of or arising out of the Employee's employment relationship with Employer or the termination thereof. It is understood that this release includes, but is not limited to, any claims for wages, bonuses, employment benefits (including claims under continuing employee benefit plans or claims under ERISA), stock options, restricted stock units, or any other stock purchase plans of Employer's subsidiaries or affiliates, or damages of any kind whatsoever, arising out of any common law torts, any contracts, express or implied, any covenant of good faith and fair dealing, express or implied, any theory of wrongful discharge, any theory of negligence, any theory of retaliation, any theory of discrimination or harassment in any form, any legal restriction on Employer's right to terminate employees, or any federal, state, or other governmental statute or ordinance, including, without limitation, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Equal Pay Act, the Fair Credit Reporting Act, the Employee Retirement Income Security Act of 1974, the Genetic Information Non-Discrimination Act, the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), the National Labor Relations Act (NLRA), New York State Human Rights Law, New York Executive Law, New York Equal Rights Law, Equal Pay Law for New York, New York State Labor Relations Act, New York Whistleblower Law, New York Off-duty Conduct Lawful Activities Discrimination Law, New York Family Leave Law, New York Wage-Hour and Wage Payment Laws and Regulations, New York Minimum Wage Law, New York Wage Hour and Wage

Payment Law, New York State Worker Adjustment and Retraining Notification Act, or any other statutory or common law limitation or regulation of the employment relationship of state, federal, State, or other government law, and any claim for attorneys' fees and costs.

## 7. NO ADMISSION OF WRONGDOING

This Agreement shall not be construed as an admission by Employer of any wrongful act, unlawful discrimination, or breach of contract, and Employer specifically disclaims any liability to or unlawful discrimination against Employee or any other person.

## 8. ACKNOWLEDGEMENTS AND PROMISE NOT TO SUE

Employee acknowledges (i) that with the exception of any final paycheck for amounts already earned and accrued that may be issued to Employee, in accordance with Employer's regular payroll procedures, after Employee's execution of this Agreement, Employee has received from Employer all wages, salaries, bonuses, benefits, and other amounts earned and accrued, less applicable deductions, and Employer has no obligation to make any payments to Employee other than the consideration described in the Section of this Agreement titled CONSIDERATION (ii) Employee has reported to Employer any and all work- related injuries incurred during employment; (iii) Employer properly provided any leave of absence because of Employee's or a family member's health condition and Employee has not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave; (iv) Employee has provided Employer with written notice of any and all concerns regarding suspected ethical and compliance issues or violations on the part of Employer or any released person or entity; (v) Employee has accurately reported all work activities, including those outside of Employee's scheduled hours, on breaks, or after shifts; (vi) Employee has not incurred any job- related expenses for which Employer has not reimbursed Employee; and (vii) Employee has not filed any complaints, claims, or actions against Employer or any released person or entity. Employee promises not to pursue any claim settled by this Agreement.  If Employee breaks this promise, Employee agrees to pay Employer's costs and expenses (including reasonable attorney's fees) related to the defense of any such claims.

## 9. SEVERABILITY

The provisions of this Agreement are severable, and, if any part of it, other than the general release clause set forth in the section of this Agreement titled GENERAL RELEASE, is found to be unlawful or unenforceable, the unlawful or unenforceable provision(s) shall be narrowly construed, and the other provisions of this Agreement shall remain fully valid and enforceable to the maximum extent consistent with applicable law.

## 10. STATE LAW

This Agreement is entered into in New York County, New York and shall be interpreted under the laws of the State of New York without regard to New York's conflicts of laws principles.  Any disputes arising under this Agreement shall be brought in a court of competent jurisdiction within New York County, New York.  Employee acknowledges that Employee will be subject to a permanent injunction and/or temporary restraining order for any violations of this Agreement, including any violations of the Confidentiality Agreement. In the event that Employer prevails in any action brought by Employer to enforce any provision of this Agreement or the Confidentiality Agreement (including but not limited to an action for a permanent injunction or a temporary restraining order), Employee agrees that Employee will pay Employer's costs, including attorneys' fees, in addition to any other damages or amounts that may be awarded.

11. **KNOWING AND VOLUNTARY AGREEMENT**

Employee represents and agrees that Employee has read this Agreement, understand its terms and the fact that they release any and all claims Employee may have against Employer, understands that Employee has the right to consult counsel of choice and has either done so or has voluntarily waived the right to do so, and enters into this Agreement knowingly and voluntarily and without duress or coercion from any source.

Employee further acknowledges that in executing this Agreement, Employee does not rely on any representation or statement by any representative of Employer concerning the subject matter of this Agreement, except as expressly set forth in the text of this Agreement.

12. **ENTIRE AGREEMENT**

This Agreement, with the Confidentiality Agreement(s) and (if the applicable) the Secondary Release, all incorporated by reference, sets forth the entire understanding between Employer and Employee and supersedes any prior agreements or understandings, express or implied, pertaining to the terms of Employee's employment with Employer and the termination of the employment relationship, except the Agreement shall not in any way affect, modify, or nullify any prior agreement Employee entered into with Employer regarding confidentiality, trade secrets, inventions, or unfair competition.

13. **EFFECTIVE DATE**

This Agreement shall become effective on the latest of: the date of Employee's termination of employment or the date of execution of this Agreement by all parties, including execution by Employee of all releases referenced in the Agreement, or the next calendar day following expiration of any revocation period provided for in this Agreement, if Employee does not revoke (the "Effective Date").

14. **OPPORTUNITY TO CONSIDER AGREEMENT**

Employee has ten (10) calendar days to consider this Agreement (Consideration Period). If Employee signs this Agreement before the Consideration Period ends, Employee agrees, represents, and warrants that the decision to sign is knowing, voluntary, and not induced by Employer through fraud, misrepresentation or threat to withdraw or alter the offer. Employee and Employer agree that changes to the Employer's offer contained in this Agreement, whether material or immaterial, will not restart the Consideration Period. Employee acknowledges that Employee has a right to consult with an attorney of Employee's choice as to the subject matter and effect of this Agreement, has had an opportunity to do so, and enters into this Agreement freely and without duress of any kind.

15. **EXCEPTIONS AND NO INTERFERENCE WITH RIGHTS**

Nothing in this Agreement is intended to waive Employee's claims (i) for unemployment or workers' compensation benefits, (ii) for any medical benefits or any judgment or monetary awards or settlements that may arise related to medical benefits under any group health plan sponsored by Employer or any Releasee, (iii) for vested rights under ERISA- covered employee benefit plans as applicable on the date Employee signs this Agreement, (iv) that may arise after Employee signs this Agreement, or (v) which cannot be released by private agreement. In addition, nothing in this Agreement or any exhibits thereto, including but not limited to the return of property, confidentiality, and notice provision[s], nondisparagement, general release, acknowledgements provisions, or promise not to sue, prevents Employee from filing a charge or complaint with, participating in an investigation or proceeding conducted by, or providing

testimony before or confidential information to a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission ("EEOC"), National Labor Relations Board, the Department of Justice, the Securities and Exchange Commission, or any other any federal, state or local agency charged with the enforcement of any laws, or from exercising rights under Section 7 of the NLRA to engage in joint activity with other employees.  However, by signing this release Employee is waiving rights to individual relief based on claims asserted in such a charge or complaint, or asserted by any third-party on Employee's behalf, except where such a waiver of individual relief is prohibited.  This Agreement does not limit your right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law.  Please take notice that federal law provides criminal and civil immunity to federal and state claims for trade secret misappropriation to individuals who disclose a trade secret to their attorney, a court, or a government official in certain, confidential circumstances that are set forth at 18 U.S.C. §§ 1833(b)(1) and 1833(b)(2), related to the reporting or investigation of a suspected violation of the law, or in connection with a lawsuit for retaliation for reporting a suspected violation of the law.

16. **MEDICARE DISCLAIMER**

Employee represents that either (i) Employee is not a Medicare Beneficiary as of the time Employee is entering into this Agreement; or (ii) if Employee is a Medicare Beneficiary as of the time Employee is entering into this Agreement, that Employee has no claims for any medical benefits or any judgment or monetary awards or settlements that may arise related to medical benefits under any group health plan sponsored by Employer or any Releasee (collectively, "Medical Claims"); or (iii) if Employee has any Medical Claims, that such claims are not waived by this Agreement (consistent with the Section of this Agreement titled EXCEPTIONS AND NO INTERFERENCE WITH RIGHTS).  Accordingly, Employee further represents that the Centers for Medicare and Medicaid Services ("CMS") has not made any payments to a healthcare provider for which it could assert that Employer or any Releasee should have been the primary payer. Employee specifically agrees to reimburse the Employer and/or any Releasee, as appropriate, for the amount of any payment or benefit that CMS may determine should have been paid to CMS, not Employee.

**EMPLOYER**                                      **EMPLOYEE**

Amazon.com Services LLC

By:

*Beth Galetti*

    *Andrew Quijano*

    Andrew Quijano (May 28, 2025 10:35 EDT)

Dated:

Dated: 05/14/2025

May 28, 2025