**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK**

Andrew Quijano, Plaintiff, -against- AMAZON.COM SERVICES LLC, Defendant

Case No.: 1:26-cv-00664

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**

**I. THE REMOVAL IS PROCEDURALLY DEFECTIVE AS IT WAS NOT EFFECTUATED WITHIN THE MANDATORY 30-DAY STATUTORY PERIOD**

**Removal is a Three-Step Process.** Under 28 U.S.C. § 1446, removal is not a single act but a sequence. While § 1446(b) requires the filing of the Notice in Federal Court within 30 days, § 1446(d) explicitly states that the defendant "shall file a copy of the notice with the clerk of such State court, **which shall effect the removal.**"

The Defendant's removal was untimely because it failed to 'effectuate' removal within the thirty-day window required by 28 U.S.C. § 1446(b). While Defendant argues that its 1:00 AM (See Exhibit B) filing on Day 31 was 'prompt' under § 1446(d), it ignores the fact that the State Court retains complete jurisdiction until the moment of notice. As the Second Circuit established in ***U.S. ex rel. Echevarria v. Silberglitt***, 441 F.2d 225, 227 (2d Cir. 1971), **the filing of the notice is the 'essential act' intended to 'inform the state court judge that he can no longer proceed with the case**.' This requirement is not a mere formality; as noted in ***Medrano v. Texas***, 580 F.2d 803, 804 (5th Cir. 1978), where notice is not provided, **however, there was no notice to the state court judge until the state received the order to show cause. Therefore, until**

1

**that time, the state court retained jurisdiction, and appellant's trial was not void.** While technically these are citing criminal case removals, 28 U.S.C. § 1446 (Civil) and 28 U.S.C. § 1455 (Criminal) have the identical requirement of notifying the State court. Because the Queens County Supreme Court maintained sovereign authority over this matter through the expiration of the thirty-day window, the Defendant's attempt to remove the case was procedurally defective and untimely. Furthermore, as the Eighth Circuit held in *Anthony v. Runyon*, 76 F.3d 210 (8th Cir. 1996), the general removal statute specifies when removal is effected. Relying on 28 U.S.C. § 1446(d), the Eighth Circuit court concluded that '**The only rule that logically follows from 28 U.S.C. § 1446(d) is that removal is effected when the notice of removal is filed with the state court and at no other time**'. Here, because Defendant failed to file its notice with the Queens County Supreme Court until Day 31, the removal was not 'effected' within the mandatory 30-day window provided by **§ 1446(b)**.

## II. THE "ONE-HOUR" SLIPPERY SLOPE AND THE PRESERVATION OF STATUTORY CERTAINTY

The Defendant's failure to effect removal until 1:00 AM on Day 31 is a jurisdictional defect that cannot be cured by "creative interpretation". While the Defendant may characterize a one-hour delay as a *de minimis* technicality, the removal statute is a "mandatory" thirty-day limit that must be "strictly construed". If this Court were to grant the Defendant an extra hour of state court jurisdiction, **there is no logical or legal stopping point to prevent a future defendant from seeking two hours, or twelve, or a full day**. To allow such a "slippery slope" would be to rewrite the acts of Congress and "subvert the policy behind the Local Rules and encourage noncompliance.

The "essential act" of notifying the state court is intended to "inform the state court judge that he can no longer proceed with the case". Because the Defendant waited until 1:00 AM, the Queens County Supreme Court remained the sole sovereign authority over this matter throughout the entire 30-day window. **If the Defendant had initiated the removal process at 10:00 PM rather than 11:45 PM (ECF No. 9-1), there would be no timing procedural defect to report.** The havoc of this delay is evident in the State Court's continued management of this case, as evidenced by the **Preliminary Conference Order filed on February 26, 2026 (see Exhibit A) and the fact that the case in Queens is still active (See Exhibit C)**. Countless defense attorneys across this Circuit have complied with this deadline without tempting fate; **there is no reason to grant the Defendant a special exemption** from the "strict conformity" required by the Second Circuit (see *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 104, 105-06 (2d Cir. 1991). As the Eighth Circuit correctly concluded, removal is effected only when the state filing occurs "and at no other time".

## III. DEFENDANT'S RELIANCE ON MOLTNER IS DISINGENUOUS GIVEN ITS OWN CALCULATIONS

The Defendant's attempt to hide behind *Moltner v. Starbucks Coffee Co.*, 624 F.3d 34 (2d Cir. 2010), is a transparent effort to excuse a jurisdictional failure. The *Moltner* "bright line" rule exists to protect defendants from having to "**read the complaint and guess the amount of damages**" (*Moltner*, 624 F.3d at 38). However, the Defendant in this case was never guessing.

In its own Notice of Removal, the Defendant performed the exact calculations it now claims it could not make. Defendant explicitly stated that based on Plaintiff's $175,000 salary and 253 days of separation, the back pay alone is "**at least $120,000**" (ECF No. 9-4 at "Exhibit A"    12).

If the Defendant possessed the "reasonable intelligence" to calculate that the jurisdictional threshold was met by more than $45,000 based on the initial pleadings, it cannot now claim the removal clock "never started." Furthermore, the Plaintiff did not contest this point as the Defendant noted, because it is mathematically impossible to make the claim go below $75,000 by the Defendant's own calculation and the Plaintiff's requested relief. By electing to remove on Day 30, the Defendant acknowledged the clock was running. Having made that choice, they were required to finish the removal by midnight. Furthermore, in the Moltner decision, the Second Circuit cited an Eighth Circuit precedent, implying that it could also agree with the Eighth Circuit (see Anthony v. Runyon) that notice to the State Court should be given within 30 days of service for removal to be proper.

## IV. PUBLIC POLICY AND STATE SOVEREIGNTY MANDATE REMAND OVER TRANSFER TO SDNY

**NY LL § 740 is a Non-Waivable Expression of New York Public Policy.** Plaintiff's claims are brought under **New York Labor Law § 740**, a remedial whistleblower statute. The New York Legislature enacted this law to protect the public health and safety by encouraging employees to report illegal activities under a "reasonable belief" standard without fear of retaliation.

**Legislative Intent of NY LL § 740(7) and 4(b) on Venue Selection.** The New York Legislature included specific venue guidance and ensured non-waiver provisions in **NY LL § 740** precisely to prevent the type of "venue-shifting" attempted here. By designating particular forums and barring the waiver of these protections, the Legislature intended to ensure that whistleblower claims are explicitly heard by the appropriate stakeholders, as enshrined in NY LL § 740 4(b): "brought in the county in which the alleged retaliatory action occurred." In this specific case, as

both claims are undeniably attached to Judiciary § 519. The Plaintiff, as mentioned (ECF No. 9 at 2A, 2C), stated that the venue decision was informed because Queens County is a stakeholder in this case. By having another court determine whether a Queens Court juror was, in fact, retaliated against, despite Queens Court having initially provided guidance (ECF No. 9-5, "Exhibit C"), is denying the Queens judges' authority to protect their own jurors.

**Remand is the Only Remedy that Respects State Sovereignty.** Remand is the only remedy that respects both State Sovereignty and the **Erie Doctrine**. Under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), this Court is 'in effect, only another court of the State.' *Guaranty Trust Co. v. York*, 326 U.S. 99, 108 (1945). Consequently, this Court must apply New York substantive law as a New York State Judge would.

Defendant's attempt to avoid remand rests on a private release that directly contradicts the non-waivable protections of **New York Labor Law § 740(7)**. For this Court to 'cure' a procedurally defective removal by maintaining jurisdiction based on an unenforceable contract would be to **defy the very State law it is mandated to apply**. As a New York court would be required to prioritize the statutory whistleblower protections of § 740 over a private waiver, so too must this Court.

To allow a transfer or a 'cure' under 28 U.S.C. § 1404 in these circumstances **would permit a private contract to rewrite the jurisdictional boundaries of New York's labor protections** and ignore the 'Strict Construction' doctrine of the Second Circuit. Furthermore, Defendant's silence regarding its intended venue is a notable lack of transparency toward this Court. If Defendant truly believed that a 'General Release' dictated the forum for this dispute, **it was incumbent upon the Defendant to explicitly disclose that intent in the Notice of Removal**

5

**(See ECF No. 9-4, "Exhibit A")** to state that a transfer to SDNY was required to comply with the General Release's venue clause. It should **not** have to fall on the Plaintiff to clarify the Defendant's own contract.

By waiting to acknowledge the Release in opposition to the Motion to Remand, the Defendant has engaged in a jurisdictional shell game. They seek the benefits of federal removal while ignoring the 'Erie' mandate to respect the non-waivable protections of **NYLL § 740(7)**. This Court should not reward a Defendant that hides its true venue intentions until after the 30-day removal clock has expired, especially when that expiration resulted in the Queens County Supreme Court issuing a Preliminary Conference Order on February 26, 2026 (See Exhibit A).

**The State's Interest in Protecting the Integrity of its Jurors. The underlying dispute involves protections under NY Judiciary Law § 519.** The underlying dispute involves protections under NY Judiciary Law § 519. The integrity of the State's jury system is a cornerstone of New York's authority. **Just as it would be an impermissible overreach for a New York State Court to exercise contempt authority over an incident involving a Federal Juror, even if the juror(s) were in New York, the converse should apply.** A New York State Judge is the only appropriate authority to evaluate whether a Defendant's actions constitute an affront to the State's judicial machinery. Remand is required to ensure that the court whose process was allegedly subverted is the one that adjudicates the remedy.

**V. THE ADMITTED RETRACTION OF DEFAMATORY STATEMENTS DURING STATE JURY SERVICE PRESENTS A NOVEL QUESTION OF NEW YORK PUBLIC POLICY**

The record contains an extraordinary set of facts: the Defendant issued a "Final Written Warning" to the Plaintiff, which was enforced throughout the Plaintiff's term of New York State jury service, **only to subsequently issue a written retraction and exoneration after the Plaintiff challenged the statements**. (See ECF No. 9-5, "Exhibit C", referencing "Warning_and_Survival.pdf"). In defamation law, such a written admission of error is rare and provides "prima facie" evidence that the initial statements were false. It can provide a Plaintiff with a strong allegation that the statements in the warning were either made with reckless disregard for the truth or that the Defendant knew that the warning was, in fact, false.

This case presents a novel question of first impression: **Can a general release waive a defamation claim, and the subsequent penalties that flow from it, when that defamation fully overlapped with the Plaintiff's status as an active juror for the State of New York?**

While the Defendant argues that its General Release waives all common law torts, the agreement itself contains an explicit carve-out for claims that would be "void as against public policy." (See ECF No. 9-5, "Exhibit B", § EXCEPTIONS AND NO INTERFERENCE WITH RIGHTS (v)). Under New York Law, the protection of jurors is a paramount public interest. As established in **Judiciary Law § 519**, the State has a vested interest in ensuring that jurors are not penalized or intimidated.

The Plaintiff contends that the defamation served as the "fruit of a poisoned tree." While the Plaintiff successfully fought for a retraction of the initial lie, the events that led to his termination started shortly after his e-mail to the Queens County Court. This Court must consider whether the 'General Release' can legally reach back to waive a defamation claim during a protected term of state service that started a chain of retaliation.

Pursuant to **28 U.S.C. § 1367(c)(1)**, a federal court may decline jurisdiction if a claim "raises a novel or complex issue of State law." Because no New York court has yet addressed whether the defamation of a sitting juror, and the subsequent penalties flowing therefrom, constitutes a "penalty" or "interference" under **Judiciary Law § 519** and **NY LL § 740**, the principles of comity and federalism suggest that the New York State court system is the only proper forum to resolve this **novel** case, allowing a federal court to speculate on how New York would protect its own jurors from such a unique sequence of events would undermine the State's sovereign interest in its judicial process.

## VI. ABSTENTION WOULD AVOID DUPLICATE RESOURCE RISK AND IS IN NEW YORK STATE'S INTEREST

Under ***Quackenbush v. Allstate Ins. Co.***, 517 U.S. 706 (1996), federal courts should abstain from exercising jurisdiction where adjudication in a federal forum "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 727 (quoting *Colorado River Water Conservation Dist.* v. *United States,* 424 U. S. 800, 814). New York's whistleblower protections under **NYLL § 740**, and specifically the non-waivable rights of employees under **§ 740(7)**, constitute exactly such a matter of substantial public concern. This is particularly true where, as here, the claims implicate **New York Judiciary Law § 519**, a statute designed to protect the integrity of the State's jury system, a resource as vital to the sovereignty of New York as Texas' natural resources protected in ***Burford v. Sun Oil Co.***, 319 U.S. 315 (1943).

Furthermore, the risk of "piecemeal litigation" and the waste of judicial resources is now a present reality rather than a theoretical concern. On February 26, 2026, Defendant filed an

Answer in this Court (ECF No. 14), signaling the commencement of federal discovery. Simultaneously, the Queens County Supreme Court issued a **Preliminary Conference Order** (Exhibit A) mandating a state-court discovery schedule. Conducted concurrently, these dual discovery processes would result in massive resource waste and the risk of conflicting procedural rulings.

Finally, as there is an existing inquiry involving the **New York Attorney General** (ECF No. 9-4, Exhibit D), the potential for overlapping state administrative and judicial investigations further weighs in favor of remand. To ensure a coherent application of New York's labor and judiciary laws and to avoid the administrative havoc of parallel discovery, this Court should decline jurisdiction and remand the matter to the Queens County Supreme Court.

## VII. CONCLUSION

**WHEREFORE**, for the reasons set forth above, Plaintiff Andrew Quijano respectfully requests that this Court:

1. **REMAND** this action to the Supreme Court of the State of New York, County of Queens, pursuant to 28 U.S.C. § 1447(c).
2. **GRANT** such other and further relief as the Court deems just and proper.

Respectfully submitted,

*Andrew Quijano*

Andrew Quijano, Plaintiff, *pro se*

9

## DECLARATION OF ANDREW QUIJANO IN SUPPORT OF MOTION TO REMAND

I, Andrew Quijano, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the Plaintiff in this action and am appearing *pro se*. I have personal knowledge of the facts set forth herein.
2. I submit this declaration in support of my Motion to Remand this action to Queens County Supreme Court.
3. Attached hereto as **Exhibit A** is a true and correct copy of the Preliminary Conference Order from Queens Supreme Court, received on February 26, 2026.
4. Attached hereto as **Exhibit B** is a Confirmation Notice of when the Notice to Remove was received by the Queens County Supreme Court, confirming that, as far as the State of New York is concerned, the Notice to Remove was filed on the 31st Day at 1 AM.
5. Attached here as **Exhibit C** is a screenshot of NYCEF confirming that the case is currently **active.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: February 27, 2026

*Andrew Quijano*

**Andrew Quijano**

# CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I served a true and correct copy of the foregoing Memorandum of Law in Support of Motion to Remand via Email to the following counsel of record:

**Jason D. Burns, Esq. / Shira M. Poliak, Esq.**

**Greenberg Traurig, LLP**

**One Vanderbilt Avenue, New York, NY 10017**

*Andrew Quijano*

_____

Andrew Quijano, Pro Se

# EXHIBIT A

PC  02/23/2026

CC  6/1/2026

# SUPREME COURT OF THE STATE OF NEW YORK
## QUEENS COUNTY – CIVIL TERM
## PRELIMINARY CONFERENCE PART

**PRESENT: HON. MOJGAN C. LANCMAN**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Quijano, Andrew

                          Plaintiff(s),

                -against -

Amazon

                          Defendant(s).

- ------------------------------------------------------------- x

**Preliminary Conference Order**

Index Number: <u>734580-2025</u>

Date RJI Filed: <u>01/23/2026</u>

         A request for a Preliminary Conference having been filed, or the Court having acted on its own initiative pursuant to 22 NYCRR §202.12(j), it is hereby:

         **ORDERED** that disclosure shall proceed as follows:

         (1) **Insurance Coverage**:

         (a) If not yet done, defendant(s); shall disclose in writing the existence and contents of any insurance agreement**,** including umbrella or excess coverage, as described in CPLR §3101(f) within 45 days of this Order;
         (b) Plaintiff shall disclose any Uninsured Motorist/Supplemental Uninsured Motorist  coverage within 45 days of this Order.

         (2) **Bill of Particulars/Interrogatories:**
         (a) If not already served, a demand for a Bill of Particulars or Interrogatories shall be served by defendant(s) on or before  3/16/2026.
         (b) A Bill of Particulars or Interrogatories shall be served on or before 4̲/6/2026.
         (c) If an affirmative defense or counterclaim is asserted, a Demand for a Bill of Particulars or Interrogatories shall be served by<u> plaintiff  </u>on 3/16/2026.  A response to such demand shall be served on 4/6/2026.

         (3) **Medical Report(s), Record(s) and Authorization(s):** On or before **sixty (60)** days from the date hereof,  a duly executed written authorization(s) shall be furnished by  plaintiff, if applicable,  for the following:
         (a) Physician, and/or hospital, pharmacy and/or autopsy records;
         (b) Employment and/or attendance records for the period  two years prior to and one year after the date of the occurrence/accident;
         (c) No-fault file;
         (d) Diagnostic tests and films;
         (e) Collateral source authorizations / workers comp records;
         (f) W2 and/or tax return records for self-employed individuals (if there is a loss of wages claim)
         for the period of two years prior to and one year after the date of the occurrence/accident.

**(4) Physical Examinations:**

(a) Examination(s) of plaintiff shall be noticed within twenty days of the completion of the Plaintiff's deposition and held within sixty days of the service of the notice.

(b) Pursuant to 22 NYCRR §202.17(b), at least **twenty (20)** days before such examination, plaintiff shall serve upon all other parties copies of the medical reports of those physicians who have previously treated or examined him/her.

(c) A copy of the examining physician's report shall be furnished to all parties within **forty-five (45)** days of the examination.

**(5) Depositions:**

(a) Examinations before trial for all parties/non-parties shall be conducted remotely at a mutually convenient time, or, if so agreed by the parties, in person at a mutually agreed location and time, within Ninety **(90)** days of this order. The parties shall produce all relevant books, papers, records, and other material for use at the deposition. The parties shall designate, in writing, at least ten (10) days prior to the examination before trial, any specific material which is necessary for use at the deposition.

(b) Unless otherwise directed prior to the examinations before trial, attorneys seeking rulings on objections or making application for any other relief pertaining to the depositions shall virtually communicate with the Individual Assigned Justice for a determination.

(c) Once begun, a deposition shall continue until completed and shall not be adjourned without further order of the Court.

(d) The transcript of an examination before trial shall be delivered to the party deposed within thirty (30) days of the deposition, and shall be returned, duly executed, pursuant to CPLR § 3116.

(e) Subpoenas for the examination before trial of any non-party witness shall be served no later than **45 days** after the completion of party depositions, provided such witness is known by completion of party depositions, and if not known at that time, within **45 days** of first disclosure or identification of such witness or within the discretion of the Court.

(f) Defendant's right to a further deposition of plaintiff is reserved as to any new injuries or damages claimed in any supplemental Bill of Particulars served by plaintiff following the plaintiff's deposition.

(g) **Any deposition which is not held as scheduled in this Order must be promptly rescheduled for a date which is not later than 30 days after the original date. Only one such adjournment is permitted without further Court approval.**

**(6) Other Disclosure:**

(a) Within **ninety (90)** days from the date hereof, all parties shall exchange names and addresses of all witnesses, and shall exchange statements of opposing parties and photographs, or, if none, shall provide an affirmation to that effect.

(b) All parties shall exchange information relating to expert witnesses in compliance with CPLR §3101(d)(i).

(c) Medicare Liens: If plaintiff is a medicare recipient or eligible, plaintiff shall, within **ninety (90)** days, provide defendant(s) with the details of said lien(s), or if unknown, copies of correspondence to Medicare, evidencing plaintiff's efforts to determine the outstanding claim against said plaintiff/beneficiary, should one exist.

(d) Additional Disclosure Issues: the parties shall produce the following within **forty-five (45)** days, if applicable:

(1) Maintenance and repair records for (2) two years prior to and including the date of the occurrence.

(2) Contracts and all related contract documents (i.e. Progress Reports) for two years prior to and including the date of the occurrence.

(e) Demands for documents shall be served within **30 days** and shall be responded to within **30 days** from service.

Case 1:26-cv-00664-LDH-RML    Document 16    Filed 02/27/26    Page 15 of 19 PageID #: 174

(7) **Impleader**: All third-party actions shall be commenced within **sixty (60)** days of the last deposition. Joinder of a third-party action beyond this date without leave of Court may result in a severance.

(8) **Compliance Conference**:

Unless a Note of Issue / Certificate of Readiness shall have been filed prior thereto, a Compliance Conference Order will be automatically generated by the assigned Compliance Conference / Settlement Part on     6/1/2026     . The So-Ordered Compliance Conference Order will be forwarded to the County Clerk. A copy of the Order can be obtained via NYSCEF (if it is an e-filed case) or from the County Clerk (if it is a non-e-filed case). No appearance is required.

(9) **ADR**: Parties are encouraged to utilize Alternative Dispute Resolution to resolve the action as early and as efficiently as possible.  Information regarding ADR can be found     **HERE**   and by contacting the ADR Coordinator at QSCADR@nycourts.gov.

(10) **Summary Jury Trials**: Parties are encouraged to consider a summary jury trial and shall notify the Court within Ninety **(90)** days from the date hereof, if a Summary Jury Trial is requested.

(11) **Motions for Summary Judgment**: Pursuant to CPLR Rule 3212(a), any motion for summary judgment shall be made within **one hundred twenty (120)** days of the filing of the Note of Issue absent the I.A. Judge's Part Rules to the contrary or  further Order of the court.  **Motions made before the filing of the Note of Issue do not stay discovery.**

(12) **Stipulations** **of** **settlement** **or** **discontinuance** are to be filed by defendant, pursuant to 22 NYCRR 202.28, with the County Clerk, within **twenty (20)** days of such discontinuance. A copy of the stipulation shall also be emailed to the I.A. Part.

(13) **Trial Authorizations**: Properly executed HIPPA-compliant authorizations shall be served on all defendants by plaintiff within ninety (90) days of the filing of the Note of Issue.

No discovery motion shall be made without a good faith attempt by the parties to resolve the dispute. If the dispute is not resolved, the party seeking discovery shall request a virtual conference with the Individual Assigned Judge.  If the conference does not resolve the dispute, a motion may be filed unless otherwise directed by the Individual Assigned Judge. An Affirmation from the movant that a good faith effort was made to resolve the discovery dispute and that a conference with the Individual Assigned Judge was requested and held or denied, **must** accompany the motion.

**Absent good cause, non-compliance with this Order, including the failure to raise discovery problems in advance of deadlines, may result in the imposition of penalties upon the offending party and, where warranted, upon counsel.  Such penalties may include waiver of the discovery, preclusion, dismissal, striking of a pleading, costs, sanctions and attorney's fees and it is further;**

**ORDERED that except for Paragraph 5(g) set forth above, the dates in this Order may not be extended without advance approval by the Court. Stipulations, unless 'So Ordered' by the Court, will not be honored.**

Date: 02/23/2026

KB FILED
2/26/2026
COUNTY CLERK
QUEENS COUNTY

**SO ORDERED:**

_____

**MOJGAN COHANIM LANCMAN, J.S.C.**

3 of 3

# EXHIBIT B

  

# NYSCEF Confirmation Notice

# Queens County Supreme Court

The NYSCEF website has received an electronic filing on 02/06/2026 01:00 AM. Please keep this notice as a confirmation of this filing.

**734580/2025**
**Andrew Quijano v. Amazon**
**Assigned Judge: Karina E. Alomar**

## Documents Received on   02/06/2026 01:00 AM

| Doc # | Document Type |
|---|---|
| 5 | NOTICE OF REMOVAL / REMAND (PRE RJI) |

## Filing User

SHIRA MAIA POLIAK | shira.poliak@gtlaw.com | 2128019200
One Vanderbilt Avenue, New York, NY 10017

## E-mail Service Notifications

An email regarding this filing has been sent to the following on 02/06/2026 01:00 AM:

**SHIRA MAIA POLIAK - shira.poliak@gtlaw.com**

**Andrew F Quijano - andrew.quijano@nyu.edu**

---

# EXHIBIT C

# 734580/2025 - Queens County Supreme Court

Short Caption: **Andrew Quijano v. Amazon**
Case Type: **Torts - Other (Defamation)**
Case Status: **Active**
eFiling Status: **Full Participation Recorded**
Assigned Judge: **Karina E. Alomar**

✉ E-mail Participating Parties



**Audrey I. Pheffer**
*Queens County Clerk and Clerk
of the Supreme Court*

**Queens County Clerk's Office**
*88-11 Sutphin Blvd.
Jamaica, NY 11435
718-298-0173, 718-298-0601*
*gccefile@nycourts.gov*

**Erika Louis**
*Chief Deputy County Clerk*

| **Document List** | Case Detail | Comments |

File to this Case    📄 Print Document List

**Narrow By Options**

| Document Type: | [ ▾ ] | Filed By: | [ ▾ ] |
| Motion Info: | [ ▾ ] | Filed Date: | [ ] 📅 thru [ ] 📅 |
| Document #: | [ ] | | |

[ Narrow Document List ]  [ Clear ]  📁 Show Motion Folders ONLY



*Welcome to the
Queens County
Clerk's E-filing
program of the New
York State Courts
Electronic Filing
System NYSCEF.*
*Queens County Clerk Website*

Sort By: [ Document # ▾ ]  [ Sort ]

| # | Document | Filed By | Status |
|---|---|---|---|
| 1 | SUMMONS + COMPLAINT *Corrected* | Court User<br>Filed: 11/17/2025<br>*Received: 11/17/2025* | **Processed**<br>Confirmation Notice |
| 2 | COMPLAINT (AMENDED) | Court User<br>Filed: 11/21/2025<br>*Received: 11/21/2025* | **Processed**<br>Confirmation Notice |
| 3 | AFFIRMATION/AFFIDAVIT OF SERVICE | Quijano, Andrew F(Pro<br>Hac / Pro Se)<br>Filed: 01/23/2026<br>*Received: 01/23/2026* | **Processed**<br>Confirmation Notice |