# EXHIBIT A

# Thank You

Thank you for raising your concerns to the Ethics Line. Please save your report key and password to check on your report or to make a follow-up.

**Please save your follow-up report key**

**Report Key: 331330906901**

Save Report Key

Exit

Copyright © 2000-2025 NAVEX Global, Inc. All Rights Reserved

Privacy Statement   |   Acceptable Use Policy   |   Cookie Statement   |   Contact NAVEX

# EXHIBIT B

AndrewPivotEntry.pdf    🖶 Print    ⟳ Save to OneDrive

You will maintain a concurrent active review workload of 3-4 reviews. You will complete 2 reviews and deliver independently on all due dates and quality requirements expected of an L4 Security Engineer. All documentation and customer facing artifacts will be submitted for QA prior to task completion. You will maintain a minimum review rate of 1.0 reviews per month.

**Measurement**
- You will create a workback schedule for each review within a week of kick-off, capturing task completion dates based on customer timelines. This schedule will be approved by your manager and reviewed weekly.
- Review tasks will be completed within timelines as determined by the workback schedule.
- If blockers arise, you will communicate them to your manager, address them, and modify the workback schedule as needed with manager approval.
- Work will be completed independently with technical depth expected of a L4 Security Engineer as outlined in process and calibration guidelines.
- Documentation will follow Quality Assurance and Issue Writing standards.
- All risks will be submitted to your manager for review prior to cutting them to ASR/Shepherd.
- A peer reviewer will validate tasks have been completed, issues identified, and artifacts documented properly prior to sharing with customers.
- Rework required from Manager-QA should not exceed more than 10% of artifacts.

**Associated Amazon Leadership Principle(s):**
Insist on the Highest Standards; Earn Trust; Deliver Results

**Expectation 2 - Due Date: June 28, 2025**
Less than 10% of your security findings in each review will be returned to you by your manager for rework.

**Measurement**
- You will peer review all risks with a team Risk Bar Raiser
- You will submit all risks to your manager prior to cutting them in ASR/Shepherd
- All risks will follow the Issue Quality Review Checklist Guidelines

**Associated Amazon Leadership Principle(s):**
Customer Obsession; Dive Deep

---

While your manager is willing to provide assistance, coaching, and support to help you improve your performance, it is important for you to understand that the responsibility for bringing your performance up to an acceptable level rests with you. Your manager will review your progress on a regular basis during 1:1s. Depending on your performance, the length of your plan could be lengthened or shortened. You are encouraged to discuss any concerns or questions you may have regarding this plan with your manager, HR partner, or skip-level manager. As part of the standard Pivot process, Amazon will implement enhanced security measures to protect Amazon's confidential information, which may impact your ability to move data off your laptop.

**EMPLOYEE ACKNOWLEDGEMENT AND AGREEMENT TO TERMS:**
We will place a copy of this plan in your Pivot file. If you do not meet the above-stated expectations, maintain them, and sustain improved performance, you will be subject to further action, up to and including termination of employment. If you choose the Improve option, please sign below and return to your manager.

# EXHIBIT C

**GT** GreenbergTraurig

## Alert | Financial Regulatory & Compliance/ Labor & Employment



**October 2023**

# SEC Broadens Scrutiny of Employment and Separation Agreements Under Whistleblower Rule

In September 2023, the Securities and Exchange Commission (SEC) announced three separate enforcement orders reflecting a renewed interest in and scrutiny of provisions in employment agreements and separation agreements. These three settled cases resulted in cease-and-desist orders, fines, and other sanctions against a registered investment adviser, a public company, and a privately held company in connection with provisions in employment and separation agreements the SEC deemed violated Rule 21F-17(a), which protects against actions taken to impede whistleblowers. In one case, the SEC imposed a $10 million penalty against an investment adviser in part based upon a standard "Confidential Information" provision contained in employment agreements the adviser required new employees to sign as part of the onboarding process. These orders reflect not only a broad range of provisions and practices that the SEC views as impeding securities law whistleblowers, and a broad range of employers, but also a broad scope of time: the orders address conduct dating back to the rule's initial adoption in August 2011.

Rule 21F-17(a) under the Securities Exchange Act of 1934 provides: "No person may take any action to impede an individual from communicating directly with the Commission staff about a possible securities law violation, including enforcing, or threatening to enforce, a confidentiality agreement...with respect to such communications." In past years, the SEC has taken action under the rule primarily against securities registrants (including broker-dealers and registered investment advisers), public companies, and other companies directly involved in securities markets, and frequently involving direct actions impeding whistleblowers. In September 2023, however, the SEC took action involving employment agreements or

© 2023 Greenberg Traurig, LLP

**GT** GreenbergTraurig

practices it believes may tend to discourage whistleblowers, even if no employees were shown to have been impeded or deterred from communicating to the SEC staff about a possible securities law violation:

- On Sept. 29, 2023, the SEC imposed a cease-and-desist order and $10 million penalty against a registered investment adviser that, between August 2011 and April 2019, required new employees to sign employment agreements that prohibited them from disclosing "Confidential Information" to anyone outside of the company unless authorized by the company or required by law or an order of a court or other regulatory or governmental body, without any exception for voluntary communications with the Commission concerning possible securities laws violations. In addition, the company required approximately 400 of its departing employees to sign general releases and agreements affirming that they had not filed any complaints with any governmental agency, department, or official in order to receive deferred compensation and other benefits that were sometimes worth millions of dollars. Departing employees who did not execute general releases and agreements were provided with exit letters that specified "all provisions of your Employment Agreement…shall remain in full force and effect," and this included the provision prohibiting disclosure of Confidential Information unless such disclosure had been authorized by the company. The SEC found that the company's employment agreements, written releases, and related practices raised impediments to employees from engaging in whistleblowing.

- On Sept. 19, the SEC imposed a cease-and-desist order and $375,000 penalty on a public company for having entered into separation agreements since 2011 that required employees to represent they had not filed any complaint or charges against the company with any state or federal court, state, or federal agency. In 2015, the company added carve-out language to its agreements indicating that nothing in the agreement prohibited the employee from filing a charge with or participating in an investigation or proceeding by the EEOC, NLRB, SEC, DOJ, or comparable federal, state, or local agency. The SEC found, however, that because the carve-out was prospective in application, it did not remedy the impeding effect of the employee representation.

- On Sept. 8, the SEC imposed a cease-and-desist order and a penalty of $225,000 on a privately held LLC that, between February 2020 and March 2023, entered into 22 separation agreements that stated "nothing in this agreement is intended to limit in any way your right or ability to file a charge or claim with any federal, state or local agency," but the agreement also took away an employee's right to recover a monetary award for filing a claim with, or participating in an investigation or action by, a governmental agency. The Commission held "the agreements raised impediments to participation in the Commission's whistleblower program by having the employees forego the critically important financial incentives that are intended to encourage persons to communicate directly with the Commission staff about possible securities law violations."

Given the wide scope of these orders, all companies, even those not directly involved in the securities markets, should consider reviewing their employment, separation, and similar employment-related agreements and practices to ensure nothing could be construed as discouraging securities law whistleblowing. In particular, the agreements should expressly carve out communications with the SEC from any confidentiality clauses or similar restrictions, contain no affirmation relating to filing a complaint with any governmental agency department or official, and contain no restriction upon receipt of whistleblower awards. The SEC is prepared to act against any company relating to any provision or practice it believes tends to discourage contact about possible securities law violations. Although this GT Alert summarizes recent developments under the federal securities laws, employers may also be subject to other federal or state laws or regulations with similar whistleblower protections. For example, in March 2023 GT reported on a ruling from the National Labor Relations Board (NLRB) that severance agreements with broad – yet common – confidentiality and non-disparagement provisions are unlawful

**GT** GreenbergTraurig

because of their chilling effect on employees' exercise of their rights under the National Labor Relations Act (NLRA), including the right to disclose that the employer had violated the NLRA, to file charges or assist with NLRB investigations, and to discuss the terms of the severance agreement or prior employment with former coworkers.

## Authors

This GT Alert was prepared by:

- Arthur Don | +1 312.456.8438 | dona@gtlaw.com

- Tracy L. Gerber | +1 561.650.7985 | gerbert@gtlaw.com

- Hannah Caplan | +1 303.572.6500 | Hannah.Caplan@gtlaw.com

- Jack S. Gearan | +1 617.310.5225 | gearanj@gtlaw.com

Albany. Amsterdam. Atlanta. Austin. Berlin.¬ Boston. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Kingdom of Saudi Arabia.« Las Vegas. London.* Long Island. Los Angeles. Mexico City.+ Miami. Milan.» Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento. Salt Lake City. San Diego. San Francisco. Seoul.∞ Shanghai. Silicon Valley. Singapore.⁻ Tallahassee. Tampa. Tel Aviv.^ Tokyo.¤ United Arab Emirates.‹ Warsaw.~ Washington, D.C.. West Palm Beach. Westchester County.

*This Greenberg Traurig Alert is issued for informational purposes only and is not intended to be construed or used as general legal advice nor as a solicitation of any type. Please contact the author(s) or your Greenberg Traurig contact if you have questions regarding the currency of this information. The hiring of a lawyer is an important decision. Before you decide, ask for written information about the lawyer's legal qualifications and experience. Greenberg Traurig is a service mark and trade name of Greenberg Traurig, LLP and Greenberg Traurig, P.A. ¬Greenberg Traurig's Berlin office is operated by Greenberg Traurig Germany, an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP. «Khalid Al-Thebity Law Firm in affiliation with Greenberg Traurig, P.A. is applying to register a joint venture in Saudi Arabia. *Operates as a separate UK registered legal entity. +Greenberg Traurig's Mexico City office is operated by Greenberg Traurig, S.C., an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP. »Greenberg Traurig's Milan office is operated by Greenberg Traurig Santa Maria, an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP. ∞Operates as Greenberg Traurig LLP Foreign Legal Consultant Office. ⁻Greenberg Traurig's Singapore office is operated by Greenberg Traurig Singapore LLP which is licensed as a foreign law practice in Singapore. ^Greenberg Traurig's Tel Aviv office is a branch of Greenberg Traurig, P.A., Florida, USA. ¤Greenberg Traurig's Tokyo Office is operated by GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubengoshi Jimusho, affiliates of Greenberg Traurig, P.A. and Greenberg Traurig, LLP. ‹Greenberg Traurig's United Arab Emirates office is operated by Greenberg Traurig Limited. ~Greenberg Traurig's Warsaw office is operated by GREENBERG TRAURIG Nowakowska-Zimoch Wysokiński sp.k., an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP. Certain partners in GREENBERG TRAURIG Nowakowska-Zimoch Wysokiński sp.k. are also shareholders in Greenberg Traurig, P.A. Images in this advertisement do not depict Greenberg Traurig attorneys, clients, staff or facilities. No aspect of this advertisement has been approved by the Supreme Court of New Jersey. ©2023 Greenberg Traurig, LLP. All rights reserved.*

# EXHIBIT D

Case 1:26-cv-00664-LDH-RML   Document 20-1   Filed 03/17/26   Page 10 of 10 PageID #: 227

 **NYU**

**Andrew Quijano <afq2003@nyu.edu>**

---

## Activity in Case 1:26-cv-00664-LDH-RML Quijano v. Amazon.com Services LLC Motion for Pre Motion Conference

1 message

---

**ecf_bounces@nyed.uscourts.gov** <ecf_bounces@nyed.uscourts.gov>

Wed, Mar 4, 2026 at 10:13 PM

To: nobody@nyed.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mailbox is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### Eastern District of New York

### Notice of Electronic Filing

The following transaction was entered by Poliak, Shira on 3/4/2026 at 10:13 PM EST and filed on 3/4/2026

| | |
|---|---|
| **Case Name:** | Quijano v. Amazon.com Services LLC |
| **Case Number:** | 1:26-cv-00664-LDH-RML |
| **Filer:** | Amazon.com Services LLC |
| **Document Number:** | 17 |

**Docket Text:**
**Letter MOTION for pre motion conference by Amazon.com Services LLC. (Poliak, Shira)**

**1:26-cv-00664-LDH-RML Notice has been electronically mailed to:**

Andrew Quijano &nbsp &nbsp andrew.quijano@nyu.edu

Jason David Burns &nbsp &nbsp Jason.Burns@gtlaw.com, gtcourtalert@gtlaw.com, jason-burns-4141@ecf.pacerpro.com, robinsonsh@gtlaw.com

Shira Poliak &nbsp &nbsp shira.poliak@gtlaw.com, jason-burns-4141@ecf.pacerpro.com, lateesha.vines@eeoc.gov, shira--poliak-5579@ecf.pacerpro.com

**1:26-cv-00664-LDH-RML Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP NYEDStamp_ID=875559751 [Date=3/4/2026] [FileNumber=20864259-0]
[e340a971ee3b08e167eb4ad58c0ee427f931ce59f0333da9d2ef3c6dfb253c9c0b862
352405fc4cf7dffa9263d0b923092ea990f7e279f614faf4c1283dacc88]]